

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 27, 2023

<u>**VIA ECF**</u>

Hon. Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Nathaniel Chastain*, 22 Cr. 305 (JMF)

Judge Furman:

  The Government writes regarding the defendant's plan to call Jay Thakrar as a character witness tomorrow, and the defendant's intention to introduce Defense Exhibit 48 through an unidentified witness.

  A. <u>Jay Thakrar</u>

  The defense has disclosed no Federal Rule of Criminal Procedure 26.2 material for Mr. Thakrar, but he appears to be a former co-worker of the defendant. If Mr. Thakrar testifies as a character witness, any such testimony must be limited to opinion or reputation testimony. Fed. R. Evid. 405(a). Mr. Thakrar may not testify on direct examination about specific instances of the defendant's prior good conduct. *See United States v. Chan*, No. 97 Cr. 1053 (PKL), 2002 WL 109528, at *1 (S.D.N.Y. Jan. 25, 2002) ("Thus, unless character is an essential element of the crime charged, on direct examination only reputation and opinion evidence may be used to prove the defendant's character, and specific instances of conduct may not be admitted."). The mere fact that the Government must prove the defendant's knowledge and intent does not transform the crimes with which he is charged into ones where character is "an essential element of the offense," and thus the defendant's alleged crimes do not fall within the ambit of Fed. R. Evid. 405(b). *See United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997) ("if specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception of Rule 405(b) would swallow the general rule of 405(a) that proof of specific acts is not allowed.").

  It is well established, however, that once a defendant has put his character in issue the Government may cross-examine character witnesses concerning relevant specific instances of the defendant's conduct. *See* Fed. R. Evid. 405(a). While the Government may not ask guilt-assuming hypotheticals of character witnesses, *see United States v. Oshatz*, 912 F.2d 534, 539 (2d Cir. 1990), questions about specific instances of conduct are permitted to evaluate the character witness, and

under certain circumstances may include questions regarding the offense at issue. Indeed, the Advisory Committee Notes to Rule 405 make clear that "on cross-examination inquiry is allowable as to whether the reputation witness has heard of particular instances of conduct pertinent to the trait in question" on the theory that " since the reputation witness relates what he has heard, the inquiry tends to shed light on the accuracy of his hearing and reporting." Fed. R. Evid. 405. Accordingly, it is permissible to ask of the witness on cross-examination "whether he knew" about a fact "as well as whether he had heard" it. *Id.*

Accordingly, the Government respectfully requests that the Court preclude the defendant from eliciting any character evidence that is not in the form of reputation or opinion testimony.

B. Defense Exhibit 48

This evening, the defense disclosed a revised version of Defense Exhibit 48, which purports to show the defendant's OpenSea compensation, the money he made from featured NFT transactions, as well as the value of his "stock options." There are several problems with this exhibit and it should be excluded under Federal Rule of Evidence 403. The exhibit, which is attached to this letter, appears to show the value of the defendant's equity plus salary in the months May, June, July, August, and September 2021. While the chart does not indicate how exactly the purported value of the defendant's equity is calculated, the chart seems to suggest that it is based on a OpenSea valuations that occurred in March 2021 and July 2021, multiplied by "Nate's equity," which is listed as approximately 0.5 percent.

The problems with the chart begin from a faulty premise about the defendant's equity interest. The uncontroverted documentary evidence and witness testimony is that the defendant was granted an equity award in the form of stock options when he started at OpenSea which was "subject to vesting." (GX-607.) Under the terms of the defendant's employment agreement, "1/4 of the vesting shares … vest on the 12-month anniversary of the commencement of [his] employment." *Id.* Alex Atallah similarly testified that "vesting means you don't have the ability to exercise all of your options immediately" because "some amount of time has to pass, time while you are fully employed at the company." Tr. at 186. Meaning, whatever options the defendant had, he could not "exercise any of them until [his] one-year anniversary, and at that point [he could] access 25 [percent] of them." *Id.* In other words, there is no evidence that the defendant's stock options ever vested because he was not at the company long enough; there is no evidence that he ever exercised stock options and bought stock; and there is no evidence that the defendant ever owned any shares of OpenSea.

As a result, several elements of the proposed exhibit are incorrect and will confuse and mislead the jury. First, the chart is misleading because the defendant never owned any shares of OpenSea, and therefore he did not in fact have "equity." Second, the chart falsely equates stock options with equity, when the value of a stock option is not equivalent to that of equity. Indeed, typically options—particularly options are not immediately exercisable—are valued at a significant discount rate, and therefore the wrong valuation is assigned to the options. Third, the defendant was not going to get any options until they vested, and therefore it is incorrect to imply in the chart that he had options in the months of May through September. Fourth, the chart cites to the company's Series A and B valuations as the basis for the defendant's non-existent share

value. But again, the math is not that simple: the defendant's employment agreement says that his equity award should be valued based on the "fair market value of the Company's common stock on the date the Equity Award is granted." There is no evidence in the record, however, that the fair market value of an equity award is the same amount as how company shares are valued in an investment round. Fifth, the chart incorrectly combines equity with salary, as if to suggest that the defendant's hypothetical future equity interest is as liquid and available as his monthly salary. There is no evidence in the record, however, that shows that was in fact true, or that the defendant believed that to be true.

Accordingly, because Defense Exhibit 48 is plagued by inaccuracies, based on incorrect assumptions, and is likely to confuse the jury and complicate collateral aspects of the trial relating to the defendant's equity grant, the exhibit should be precluded.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: __/s_____
Thomas Burnett
Allison Nichols
Nicolas Roos
Assistant United States Attorneys

cc: All counsel (*by ECF*)

**Defense Exhibit 48**



Sources:
OpenSea Series A Valuation (March 2021): $141,086,966 (https://pitchbook.com/profiles/company/226883-35#funding)
OpenSea Series B Valuation (July 2021): $1,400,000,000 (https://www.crunchbase.com/funding_round/opensea-series-b--a365136a)
Nate's Equity: ~0.5%